IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:22-cv-00073-M

|  |  |
|---|---|
| CENTER FOR ENVIRONMENTAL HEALTH, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL REGAN,[1] in his official capacity as Administrator of the U.S. Environmental Protection Agency, *et al.*, <br><br> Defendants. | **MOTION TO DISMISS** |

Defendants Michael Regan, Administrator of the U.S. Environmental Protection Agency, and the U.S. Environmental Protection Agency (collectively "EPA") move to dismiss Plaintiffs' Amended Complaint for lack of subject-matter jurisdiction. This motion is supported by the Memorandum of Points and Authorities set forth below. After conferring with Plaintiffs' counsel via telephone conference regarding the substance of this motion, Plaintiffs have indicated they will oppose the motion.

---

[1] EPA Administrator Michael Regan is automatically substituted for Jane Nishida pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

## INTRODUCTION

In October 2020, Plaintiffs petitioned EPA to initiate a proceeding for the issuance of a rule or order under the Toxic Substances Control Act's ("TSCA") Section 21 citizen's petition provision. Plaintiffs requested that EPA issue a rule or order under Section 4 of TSCA directing The Chemours Company ("Chemours") to conduct health and environmental-effects testing regarding 54 chemical substances they purport to be per- and poly-fluoroalkyl substances ("PFAS"). In January 2021, EPA denied Plaintiffs' petition. Plaintiffs brought this action seeking review of EPA's denial. Separately, Plaintiffs administratively requested EPA to reconsider its January 2021 denial of Plaintiffs' petition. In December 2021, upon reconsideration, EPA granted the petition. Nevertheless, Plaintiffs filed an amended complaint that asserts one claim under TSCA Section 21 and purports to seek judicial review of both EPA's January 2021 denial *and* EPA's subsequent December 2021 grant of the petition.

The Court lacks jurisdiction to hear Plaintiffs' sole TSCA claim. Section 21 allows for judicial review only when: (1) EPA denies a citizen petition or (2) EPA takes no action on the petition within a certain time. 15 U.S.C. § 2620(b)(4)(A). Here, EPA *granted* Plaintiffs' petition and is commencing "an appropriate proceeding" in accordance with TSCA Section 4.

To be sure, EPA's December 2021 grant did not commit to every aspect of the proposed testing program set forth in Plaintiffs' petition. Indeed, EPA explained that it expects to take some immediate actions and to defer certain others pending the

development of additional information. This, however, does not constitute a denial of the petition. In granting Plaintiffs' petition, TSCA Section 21 only requires EPA to *commence* an appropriate proceeding in accordance with the applicable section of TSCA. 15 U.S.C. § 2620(b)(3). In other words, TSCA Section 21 does not require a specific result of any administrative proceeding, much less the extensive testing program that Plaintiffs proposed in their petition.

Moreover, because EPA is granting the statutory relief Plaintiffs are entitled to (i.e. the commencement of a proceeding for the issuance of a rule or order regarding PFAS under Section 4), the Court is not authorized to provide any additional relief under TSCA Section 21. Therefore, Plaintiffs' claim is also moot. The Court should grant the motion and dismiss this case for lack of jurisdiction.

## BACKGROUND

### I.    Statutory Background

Congress enacted the Toxic Substances Control Act, 15 U.S.C. §§ 2601 *et seq.*, as a way to inventory, assess, and manage the risks to human health and the environment associated with man-made chemical substances. *See generally* 15 U.S.C. § 2601(b). "Enactment of this legislation in 1976 launched a comprehensive program to anticipate and forestall injury to health and the environment from activities involving toxic chemical substances." *Envtl. Def. Fund v. Reilly*, 909 F.2d 1497, 1498 (D.C. Cir. 1990) (internal quotation marks omitted). Specifically, TSCA authorizes EPA to mandate reporting, record-keeping and testing requirements, and restrictions

related to chemical substances and mixtures. *See* 15 U.S.C. § 2601(b). TSCA Sections 4 and 21 are especially pertinent to this case.

**A.    TSCA Section 4**

Section 4 requires EPA to mandate testing of a chemical substance or mixture if EPA finds that: (1) the manufacture, distribution in commerce, processing, use, or disposal of a chemical substance, or that any combination of such activities, may present an unreasonable risk of injury to health or the environment; (2) there is insufficient information and experience to reasonably determine or predict the effects of a chemical substance on health or the environment; and (3) testing of the chemical substance is necessary to develop the missing information. *Id.* § 2603(a)(1)(A)(i). If EPA determines that each of these elements is met, the Agency must require testing on the chemical substance or mixture to address this information gap and require testing that would identify information "relevant" to a determination of whether use of the chemical substance "does or does not present an unreasonable risk of injury to health or the environment." *Id.* § 2603(a)(1). Section 4 test rules and orders are subject to judicial review in the courts of appeals pursuant to Section 19 of TSCA. *See Id.* § 2618(a).

**B.    TSCA Section 21**

TSCA Section 21 allows any person to petition EPA to initiate a proceeding for the issuance, amendment, or repeal of a rule under TSCA sections 4, 6, or 8, or to issue an order under TSCA section 4, 5(e), or 5(f). *Id.* § 2620(a). The petition must set forth facts establishing that it is "necessary" to initiate the requested action. *Id.*

§ 2620(b)(1). Within ninety days after filing, EPA must either grant or deny the petition. *Id.* § 2620(b)(3). If EPA grants the petition, EPA must promptly commence an "appropriate proceeding in accordance with," section 4, 5, 6, or 8 of TSCA. *Id.* If EPA denies the petition, EPA must publish its reasons in the Federal Register. *Id.*

TSCA Section 21 provides a right to judicial review in a district court of the United States only if EPA: (1) denies the petition, or (2) fails to grant or deny the petition within ninety days. *Id.* § 2620(b)(4). In a judicial action challenging EPA's denial of or EPA's failure- to- act on a TSCA Section 21 petition, the petitioner is "provided an opportunity to have such petition considered by the court in a de novo proceeding." *Id.* § 2620(b)(4)(B). If the petitioner successfully demonstrates the required statutory elements, "the court shall order [EPA] to initiate the action requested by the petitioner." *Id.*

## II.    Factual and Procedural Background

### A.    EPA initially denied Plaintiffs' TSCA Section 21 petition.

In October 2020, Plaintiffs petitioned EPA to initiate a rulemaking proceeding or issue an order under TSCA Section 4(a)(1)(A)(i) requiring testing on 54 substances they assert are perfluoroalkyl and polyfluoroalkyl substances ("PFAS"). *See* Pet. 1 (attached as Exh. 1).[2] Plaintiffs requested EPA to compel Chemours to fund and carry

---

[2] A court may consider a document attached to a motion to dismiss in determining whether to dismiss the complaint if "it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). Moreover, "[i]n determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond,*

5

out health and environmental-effects testing on 54 purported PFAS that, Plaintiffs allege, are manufactured by Chemours and discharged into the Cape Fear River in North Carolina. Am. Compl. ¶¶ 1–2, 7, ECF No. 32; *see also* Pet. 1. Plaintiffs also noted that the intent of the petition was to develop information that would enable Cape Fear River watershed communities to better understand the potential effects to their health from PFAS exposures. *E.g.*, Pet. 22–23.

Plaintiffs also proposed a detailed testing program that they believe would achieve their objective. In particular, Plaintiffs' suggested a series of testing protocols requiring:

1. Testing on fifty-four chemical substances, to include human health effects studies in experimental animals, physical and chemical property studies, fate and transport studies, and eco-toxicity testing;

2. Animal studies on three chemical mixtures;

3. Human studies of communities exposed to PFAS from drinking water and other exposure pathways, including residents from the Cape Fear River watershed, and human half-life studies on all 54 substances in Chemours' workers; and

4. The development and submission of analytical standards.

Pet. 1–4. Finally, Plaintiffs also requested that EPA contract with what is now known as the National Academy of Sciences, Engineering, and Medicine ("NASEM") to form an independent expert science panel with the responsibility for overseeing all aspects of the testing program. *Id.*

In January 2021, EPA denied the petition because, *inter alia*, the petition failed to provide the facts necessary for the Agency to determine for each of the 54

---

*Fredericksburg & Potomac R.R. Co. v. United State*s, 945 F.2d 765, 768 (4th Cir. 1991).

substances that existing information and experience are insufficient to reasonably determine or predict their effects on health or the environment and that the requested testing was necessary to develop such information. 86 Fed. Reg. 6,602 (Jan. 22, 2021). On March 3, 2021, Plaintiffs commenced this action in the Northern District of California seeking judicial review of EPA's January 2021 petition denial. ECF No. 1.

### B. Upon reconsideration, EPA granted Plaintiffs' petition.

Nearly simultaneously with filing their complaint, Plaintiffs also submitted to EPA an administrative request to reconsider its decision to deny their petition. Am. Compl. ¶ 69. In September 2021, EPA granted Plaintiffs' request for reconsideration, and this case was placed in abeyance for 90 days while EPA reconsidered the petition. ECF No. 25.

On December 28, 2021, EPA wrote a letter to Plaintiffs' counsel explaining that after reconsidering its prior denial, EPA is now granting their petition. "Dec. 2021 Resp. (attached as Exh. 2); Am. Compl. ¶ 81. In granting the petition, EPA noted that most of the substances identified in the petition overlap with the priority categories of chemical substances that EPA has identified for testing as part of its National PFAS Testing Strategy ("Testing Strategy"), which EPA published in October 2021. *See* Dec. 2021 Resp. 2.[3] The Testing Strategy—one of the largest testing programs

---

[3] *See also* U.S. Environmental Protection Agency, NATIONAL PFAS TESTING STRATEGY: IDENTIFICATION OF CANDIDATE PER- AND POLYFLUOROALKYL SUBSTANCES (PFAS) FOR TESTING (October 2021). Available at https://www.epa.gov/system/files/documents/2021-10/pfas-natl-test-strategy.pdf (last accessed June 7, 2022).

ever undertaken in the Agency's history—was developed by EPA's Office of Chemical Safety and Pollution Prevention, in collaboration with the Office of Research and Development, to deepen the understanding of the impacts of PFAS, including potential hazards to human health and the environment. Dec. 2021 Resp. 9.

Notably, the Testing Strategy advances an iterative approach where PFAS are grouped in categories (based on chemistry features and existing toxicity data) and representative substances within those categories have been identified for the first phases of testing under TSCA Section 4. *Id.* Data from these representative substances could then be extrapolated to other PFAS belonging in the same category. *Id.* at 2. Because it would be impossible for the Agency to understand expeditiously, let alone address, the risks that hundreds of PFAS that are currently in commerce may pose to human health and the environment if EPA attempted to research them one at a time, this categorical approach is a more efficient way to understand the risks associated with PFAS. *Id.* at 9. The use of this categorical approach is also encouraged under TSCA and the 2020 National Defense Authorization Act. *See* 15 U.S.C. § 2603(h)(1)(B); *id.* § 2625(c)(1); 15 U.S.C. § 8962. EPA anticipates that the first phase of testing on 24 PFAS will provide data that, based on the total number of PFAS in the 24 covered categories, can be extrapolated to 2,950 PFAS that fall within their respective priority categories. Dec. 2021 Resp. 2. Indeed, on June 6, 2022, EPA issued the first of the expected 24 PFAS testing orders, directing, among others, Chemours to develop and submit information regarding 6:2 fluorotelomer sulfonamide betaine (CASRN 34455-29-3). *See* EPA 6:2 fluorotelomer sulfonamide

betaine testing order (available at https://www.regulations.gov/docket/EPA-HQ-OPPT-2021-0897) (last accessed June 17, 2022).

EPA also addressed the particular testing protocols proposed in Plaintiffs' petition and described how it intends to proceed with respect to Plaintiffs' petition. EPA specifically asserted that "the actions it intends to commence will directly address the concerns of the petitioners and will constitute the appropriate proceeding." Dec. 2021 Resp. 8. First, EPA explained that as provided for in the Testing Strategy, the first phase of 24 PFAS test orders will address 30 of the 54 chemical substances Plaintiffs identified in their petition, as well as additional PFAS. *Id.* at 2, 8–15. The initial PFAS test orders will include animal tests that measure most of the specific human health related toxicity endpoints identified as a concern by the Plaintiffs (e.g., systemic, reproductive, developmental, thyroid, and immunological toxicity). And subsequent tiers of testing that will be identified from the initial test orders may include additional endpoints (e.g., cancer), depending on the results of the initial tiers of tests and consistent with the TSCA statutory requirement regarding tiered testing. *Id.*; *see also* 15 U.S.C. § 2603(a)(4).

An additional 9 substances identified in the petition belong to categories of PFAS that are not part of the initial phase of 24 PFAS testing. Dec. 2021 Resp. 2–3, 15–17. EPA is conducting more in-depth analyses regarding the sufficiency of the existing data, which will inform later phases of testing. *Id.* While the remaining 15 substances identified in the petition do not fit the definition of PFAS used in developing the Testing Strategy, EPA has determined that there is robust data on

some of them and is conducting more in-depth analyses of the existing available data to inform the later phases of its iterative testing approach. *Id.*

Second, regarding Plaintiffs' proposal to require animal studies on three PFAS mixtures, EPA explained that it is planning to address PFAS mixtures with component-based approaches wherein the toxicity of the product is determined or predicted from the toxicity of individual chemical substances that comprise the mixture, an approach that is consistent with the current state-of-science on PFAS. EPA is proceeding with development and peer review of such methods as specifically applied to PFAS. *Id.* at 3, 17.

Third, regarding Plaintiffs' proposal for human health studies, EPA noted that it is contributing to and reviewing numerous existing ongoing human studies, including studies on potentially exposed workers and communities in North Carolina, and is evaluating how to further advance and expand on these efforts. *Id.* at 3.

Fourth, regarding Plaintiffs' proposal for the development of analytical standards for the 54 substances identified in the petition, EPA noted that it does not believe it is appropriate to require the development or submission of analytical standards with the initial test orders that will be issued under the Testing Strategy. Further, TSCA section 4(a)(1) does not cover the development of physical samples of a chemical substance or mixture, and so EPA noted that it lacks the authority to issue a rule or order under that provision. *Id.* at 23. Nonetheless, EPA has requested comment on whether to require the submission of existing analytical methods for

PFAS under a separate rulemaking proceeding, which the Agency expects to finalize this year. *Id.*

Finally, regarding Plaintiffs' proposal that NASEM oversee Plaintiffs' proposed testing program, EPA explained that such an oversight arrangement is not within the scope of what a TSCA Section 21 petitioner may request and therefore, the Agency has no obligation to grant or deny the request. *Id.* at 24.

### C. Plaintiffs' Amended Complaint

Notwithstanding EPA's grant of the petition, Plaintiffs decided to continue with this litigation. On February 1, 2022, Plaintiffs filed an amended complaint that purports to seek judicial review of both EPA's January 2021 denial and EPA's December 2021 grant of the petition. Am. Compl. ¶ 9. Plaintiffs contend that because "EPA refused to require testing for 47 of the 54 substances proposed for testing in the petition and rejected nearly all of the studies that petitioners requested," EPA's December 2021 response was a constructive denial of their petition. *Id.* ¶ 82. The Amended Complaint asserts one claim under TSCA Section 21. *Id.* ¶¶ 121–31. Plaintiffs seek declaratory relief, an order directing EPA to initiate a proceeding for the issuance of a rule or order under TSCA Section 4 requiring Chemours to conduct the specific studies that Plaintiffs proposed in the petition, and an award of costs. *Id.* ¶ 131; *id.* at "Request for Relief."

On May 9, 2022, upon EPA's motion, this case was transferred to the Eastern District of North Carolina. ECF No. 38. Before the transfer motion was decided, the transferor court adopted the parties' stipulation that EPA's deadline to respond to the Amended Complaint would be extended until 45 days from the date of a decision

on the motion to transfer. *See* Order Granting Stipulation to Govern Future Proceedings, ECF No. 31. Thus, EPA's deadline to respond to the Amended Complaint is June 23, 2022. EPA respectfully submits this motion to dismiss.

## STANDARD OF REVIEW FOR A MOTION TO DISMISS

As the party alleging jurisdiction, Plaintiffs bear the burden of proving that the Court has subject-matter jurisdiction. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). As a general rule, a district court's first duty is to determine whether it enjoys subject-matter jurisdiction, because that implicates the court's very power to hear the case. *Bell v. Hood*, 327 U.S. 678, 682–83 (1946).

As an agency of the Executive branch, EPA is "immune from suit [unless] it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009) (internal quotation marks and citation omitted), *abrogated on other grounds by Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 207 (2020). In other words, for a claim to be brought against the United States, there must be an explicit waiver of sovereign immunity. *Lehman v. Nakshian*, 453 U.S. 156, 160-61 (1981). And the waiver must be established by the statute itself. *See Lane v. Pena*, 518 U.S. 187, 192 (1996).

A challenge to subject-matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways"—either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject-matter jurisdiction, or a factual challenge, asserting " 'that the jurisdictional allegations of the complaint [are] not

true.' " *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (internal citation omitted) (alteration in original). In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject-matter jurisdiction." *Id*. On the other hand, in a factual challenge, "the district court is entitled to decide disputed issues of fact with respect to subject-matter jurisdiction." *Id*.[4]

A federal court also lacks subject-matter jurisdiction to decide a case that is otherwise moot due to Article III's case or controversy requirement. *Commonwealth of Va. ex rel. Coleman v. Califano*, 631 F.2d 324, 326 (4th Cir. 1980). There is no case or controversy, and a suit is moot, "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (internal quotation marks and citation omitted). Thus, a case is moot when it is impossible for a court to grant "any effectual relief whatever" to the prevailing party. *Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000).

## ARGUMENT

This Court lacks subject-matter jurisdiction to hear Plaintiffs' suit. As further explained below, under TSCA Section 21, judicial review is only available if EPA either denied a citizen petition or took no action on the petition.[5] Here, because EPA

---

[4] This motion to dismiss for lack of subject-matter jurisdiction is best characterized as a facial challenge.

[5] In addition to TSCA Section 21, Plaintiffs also cite 28 U.S.C. § 1331 (federal question) as grounds for this court's jurisdiction to hear their Amended Complaint. Am. Compl. ¶ 12. However, "Section 1331, standing alone, does not confer subject matter jurisdiction." *Huli v. Way*, 393 F.Supp.2d 266, 271 (S.D.N.Y. 2005). Plaintiffs are required to point to a viable claim arising out of an applicable federal statutory

granted Plaintiffs' petition to initiate a proceeding for the issuance of a rule or order under TSCA Section 4 regarding PFAS, judicial review is unavailing under TSCA Section 21. Moreover, EPA has already granted the statutory remedy Plaintiffs are entitled to. Because the Court cannot grant Plaintiffs any additional relief, their claim is moot.

## I. The Court Lacks Subject-Matter Jurisdiction Over Plaintiffs' TSCA Claim.

TSCA Section 21(b)(4)(A) confers jurisdiction in two circumstances: (1) if EPA fails to grant or deny a petition within 90 days; or (2) if EPA "denies a petition filed under this section." 15 U.S.C. § 2620(b)(4)(A). In December 2021, after granting Plaintiffs' request for reconsideration, EPA *granted* Plaintiffs' Section 21 TSCA petition. This Court, therefore, lacks jurisdiction over Plaintiffs' TSCA claim.

While EPA's December 2021 petition response granted the petition, the Agency also expressed that it was not committing to every aspect of Plaintiffs' proposed testing program. EPA explained, in the interest of transparency, how it anticipated conforming its actions both in substance and timing to Plaintiffs' proposed testing protocols. Dec. 2021 Resp. 2. This, however, does not constitute a denial or even an "effective denial" of the petition. *See, e.g.*, Am. Compl. ¶ 5, 91, 127–28. When granting a Section 21 petition for a Section 4 rule, order, or consent agreement, EPA is not required to also decide the substance of a final Section 4 rule, order, or consent

---

provision. Because TSCA Section 21 does not give this Court subject-matter jurisdiction, 28 U.S.C. § 1331 does not confer subject-matter jurisdiction to this Court either.

agreement. Rather, it is only required to *initiate* a proceeding in accordance with the applicable section of TSCA. And that is what EPA did here—it is commencing an appropriate proceeding under TSCA. Although not required under TSCA Section 21, EPA also went one step further in its petition response by comprehensively explaining how its anticipated actions would constitute an appropriate proceeding. *See* Dec. 2021 Resp. 8 ("The Agency believes that the actions it intends to commence will directly address the concerns of the petitioners and will constitute the appropriate proceeding"); *see also supra* pp. 9-11 (describing how the appropriate proceeding EPA anticipates commencing in response to Plaintiffs' petition addresses each of the petition's specific proposals).

To begin, consider the plain language of TSCA Section 21. Section 21 states that "[i]f the Administrator grants [a citizen] petition, the Administrator shall promptly commence an appropriate proceeding in accordance with [Section 4]." 15 U.S.C. § 2620(b)(3); *accord id.* § 2620(a) ("Any person may petition [EPA] *to initiate* a proceeding . . . ." (emphasis added)). This language contemplates a two-part approach. First, EPA must decide whether to grant or deny a Section 21 citizen petition. If EPA decides to grant the petition, EPA will only then *commence an appropriate proceeding*. Nothing in Section 21 suggests that EPA is required to simultaneously grant a citizen petition *and* decide the content of a final rule or order.

Congress's use of the phrase "appropriate proceeding" is also meaningful here. This indicates that once EPA decides to grant a petition, Congress anticipated that EPA will have discretion in deciding "appropriate" next steps in commencing a TSCA

proceeding for a rulemaking or order. TSCA Section 4 itself explicitly provides that EPA will weigh a series of discretionary and non-discretionary considerations in determining the specific protocols and methodologies to include in a final Section 4 testing rule or order. Under TSCA Section 4, any rule, order, or consent agreement issued by EPA must specifically include: (1) an identification of the chemical substance or mixture for which testing is required under the rule, order, or consent agreement, (2) protocols and methodologies for the development of information for such substance or mixture, and (3) with respect to chemical substances which are not new chemical substances and to mixtures, a specification of the period (which period may not be of unreasonable duration) within which the persons required to conduct the testing shall submit to EPA information developed in accordance with the protocols and methodologies referred to in subpart (B). *Id.* § 2603(b)(1)(A)-(C). "Protocols and methodologies" refers to the "health and environmental effects, and information relating to toxicity, persistence, and other characteristics which affect health and the environment" for which information must be developed and "to the extent necessary . . . the manner in which such information are to be developed [and] the specification of any test protocol or methodology to be employed in the development of such information . . . ." *Id.* § 2602(15). Section 4 gives EPA broad discretion to determine the specific protocols and methodologies that "may be prescribed." *See Id.* § 2603(b)(2)(A).

EPA's discretion is also cabined in certain ways. For example, in developing the protocols and methodologies referred to in subpart (b)(1)(B), EPA is required to

consider the relative cost of the various test protocols and methodologies that may be required, and the reasonably foreseeable availability of the facilities and personnel needed to perform the required testing. *Id.* § 2603(b)(1). Under TSCA Section 4(a)(4), and consistent with the iterative approach EPA is taking with respect to the Testing Strategy, EPA generally must also employ a tiered screening and testing process, under which the results of screening-level tests or assessments of available information inform the decision as to whether one or more additional tests are necessary. *Id.* § 2603(a)(4). EPA is also required to "reduce and replace, to the extent practicable, scientifically justified, and consistent with the policies of this subchapter, the use of vertebrate animals in the testing of chemical substances." *Id.* § 2603(h)(1). This may be done by, *inter alia*, encouraging or facilitating "the grouping of 2 or more chemical substances into scientifically appropriate categories in cases in which testing of a chemical substance would provide scientifically valid and useful information on other chemical substances in the category . . ." *Id.* § 2603(h)(1)(B)(ii). And to the extent that EPA is making a science-based decision in carrying out a Section 4 testing order, rule, or consent agreement, EPA is required to use protocols and methodologies consistent with the best available science, and to consider, among other things, the extent to which information is relevant to making a decision about a chemical substance or mixture. *Id.* § 2625(h).

Requiring EPA to readily adopt every aspect of Plaintiffs' proposed PFAS testing protocols in granting Plaintiffs' petition would therefore undermine the discretion Congress accorded to EPA in deciding how to best commence an

"appropriate proceeding" and would be contrary to the multi-factor discretionary and non-discretionary considerations that EPA must make when developing protocols and methodologies under TSCA Section 4.

Moreover, TSCA's legislative history confirms that EPA has discretion in determining what proceeding is appropriate to fill identified data gaps. The Senate Committee report on the original law cautioned that "in reviewing a denial of the citizen's petition by the Environmental Protection Agency, **the court can only require EPA to initiate an action. The court would not be allowed in this situation to determine the content of a rule or outcome of such a proceeding**." S. REP. No. 94-698, at 12 (1976), *reprinted in* 1976 U.S.C.C.A.N. 4491, 4502 (emphasis added).

Indeed, case law supports the proposition that the scope of judicial review pursuant to Section 21 is limited. In *Citizens for a Better Env't v. Thomas*, 704 F. Supp. 149, 152 (N.D. Ill. 1989), a group of intervenors contested the constitutionality of Section 21 because, they believed, the statute allowed a court to require EPA to promulgate Section 4 testing rules based on technical findings otherwise reserved to EPA and thereby substitute its judgment for that of EPA's judgment. This, according to the intervenors, allowed the court to control the administration of TSCA, which they believed violates the separation-of-powers doctrine. *Id.* at 151.

The court rejected the intervenors' argument and upheld the statute. The court observed that the scope of judicial remedies available under Section 21 is limited and the court could only order EPA to initiate a rulemaking under Section 21. *Id.* at 152.

And in the case of a Section 21 citizen petition for a Section 4 testing rule, the court specifically noted that it lacked the authority to decide precisely what a Section 4 testing rule (or order) would look like:

> If a petitioner can satisfy the court by a preponderance of the evidence that the action requested in the petition conforms to the requirements of the Act, the court shall order [EPA] to initiate the rulemaking procedures requested by the petitioner. **However initiating rulemaking proceedings does not in any[]way require the adoption of rules**. In fact unless the EPA makes the findings required by Section 2603(a)(1) it cannot adopt a rule requiring testing. These findings can only be made by the EPA; not by the court.

*Id.* at 152 (emphasis added). Accordingly, because the court's authority was limited to ordering EPA to initiate a rulemaking proceeding under Section 21, the statute was not an unconstitutional "intrusion into executive power." *Id.*; *see also id.* ("If [TSCA] permitted the court to substitute its judgment and promulgate the final rule, a significant intrusion into executive power would exist but that is not the case here."). *Citizens* confirms TSCA Section 21's overall statutory scheme that while citizens and courts can require EPA to initiate certain proceedings, they cannot dictate the results.

It is telling that the plain language of Section 21, legislative history, and *Citizens* are all aligned in this interpretation of Section 21. In granting Plaintiffs' petition, EPA was only required to "commence an appropriate proceeding in accordance with" Section 4. Nothing more. Simply because EPA's December 2021 response indicates that EPA believes the "appropriate proceeding" will differ from Plaintiffs' proposed testing protocols does not render EPA's response to be a denial of

the petition. Because EPA granted the petition, TSCA Section 21 does not give this Court jurisdiction to hear Plaintiffs' claim.

## II.    Plaintiffs' Claims Are Also Moot.

Plaintiffs' suit should also be dismissed because it is moot. When "events have so transpired that the controversy has ended and there is no remedy for the court to impose, a controversy is moot unless one of the exceptions to mootness applies."[6] *Del Monte Fresh Produce Co. v. United State*s, 565 F. Supp. 2d 106, 110 (D.D.C. 2008) (citing *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997)), *rev'd and remanded on other grounds*, 570 F.3d 316 (D.C. Cir. 2009)).

Plaintiffs' Amended Complaint purports to seek judicial review for both EPA's January 7, 2021 and December 28, 2021 petition responses. *See* Am. Compl. ¶ 9. While EPA's January 7, 2021 response initially denied Plaintiffs' petition, because EPA ultimately reconsidered and granted Plaintiffs' citizen petition, their claim with respect to EPA's January 7, 2021 response is moot. *See Otter Point Dev. Corp. v. U.S. Army Corps of Eng'rs, Balt. Dist.*, 116 F. Supp. 2d 648, 651 (D. Md. 2000) (finding that a claim seeking declaratory and injunctive relief was moot when the agency ultimately granted the plaintiff's requested relief, stating "[t]he controversy

---

[6] There are two exceptions to the mootness doctrine—one for actions "capable of repetition yet evading review," and the "voluntary cessation" exception. *Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 162 (4th Cir. 2021). Neither exception applies here. Because EPA is initiating the rulemaking/order proceeding that Plaintiffs have requested, it is impossible for EPA's purported "wrongful" behavior to reoccur. *See id*. at 166 (holding that appellant's claims were moot and neither exception applied when there was no reasonable expectation for the appellant to be subject to the same harms in the future).

surrounding these issues, therefore, is no longer 'live' because [the agency] has consented to the requested relief").

Plaintiffs' claim with respect to EPA's December 28, 2021 response is also moot because EPA granted Plaintiffs all available statutory relief under the TSCA Section 21 citizen petition process and the Court cannot provide Plaintiffs any further relief. *See, e.g.*, *id.* (noting that a case is moot when the court is unable to grant "any effectual relief what[so]ever" to the parties) (quoting *Church of Scientology of Calif. v. United States*, 506 U.S. 9, 12 (1992)).

Here, the Court cannot grant any further relief under TSCA Section 21 because EPA granted the petition. Indeed, the Court is not authorized to order the specific relief Plaintiffs are seeking under TSCA Section 21. *See* Am. Compl. ¶ 131 & Requested Relief (requesting the Court issue an order requiring EPA to issue a Section 4 testing rule or order "requiring Chemours to carry out the studies on the 54 PFAS specified in plaintiffs' petition"); *see also Citizens*, 704 F. Supp. at 152 (holding that in a Section 21 TSCA suit, judicial remedies available to the plaintiff is limited and the court can only order EPA to initiate a rulemaking under Section 4, not the final outcome of the rulemaking).

Because EPA granted the petition and is commencing an appropriate proceeding—that is, EPA's intent to issue test orders that will address information gaps regarding thousands of PFAS (in addition to several other actions and follow-up actions that the Agency will take consistent with its iterative approach reflected in

the Testing Strategy)—the Court cannot grant any further relief. This case, therefore, is moot.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Amended Complaint for lack of subject-matter jurisdiction.

This 23rd day of June 2022.                    Respectfully submitted,

                                               TODD KIM
                                               Assistant Attorney General


                                               /s/ *Hubert T. Lee*

                                               HUBERT T. LEE
                                               BRANDON N. ADKINS
                                               U.S. Department of Justice
                                               Environment & Natural Resources Division
                                               Environmental Defense Section
                                               4 Constitution Square
                                               150 M Street, NE Suite 4.1116
                                               Washington, D.C. 20002
                                               (202) 514-1806 (Lee)
                                               (202) 616-9174 (Adkins)
                                               Fax (202) 514-8865
                                               Hubert.lee@usdoj.gov
                                               Brandon.adkins@usdoj.gov
                                               Lee: NY Bar #4992145
                                               Adkins: DC Bar #1010947


                                               MICHAEL F. EASLEY, JR.
                                               United States Attorney


                                               C. MICHAEL ANDERSON
                                               Assistant United States Attorney
                                               150 Fayetteville Street, Suite 2100
                                               Raleigh, N.C. 27601
                                               (919) 856-4530

Fax (919) 856-4821
Michael.anderson7@usdoj.gov
N.C. Bar No. 42646

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2022, I electronically transmitted the foregoing Motion to Dismiss to the Clerk of Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to registered counsel for all parties.

*/s/ Hubert T. Lee*